[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff Astro Oil brings this action in a two-count complaint, as amended, against defendants Louis Gherlone, Linda Gherlone, and Louis Gherlone Excavating, Inc., The fist count alleges that the defendant Louis Gherlone Excavating, Inc. refused to reimburse plaintiff Astro Oil for payment of taxes the plaintiff made to the State Department of Revenue Services, for which the primary obligation and responsibility of payment was the defendant corporation.
The second count of the complaint asserts that the individually named defendants, Louis Gherlone and Linda Gherlone, signed a personal guaranty on October 25, 1995, for extension of credit to the defendant corporation from plaintiff Astro Oil. It is asserted that this guaranty provides for joint and several liability of defendants Louis Gherlone and Linda Gherlone for the debt of Louis Gherlone Excavating, Inc., and that under the guaranty the liability extends to the payment of interest, attorney's fees, and costs associated with any effort of plaintiff Astro Oil to collect debts due.
Defendants Louis Gherlone, Linda Gherlone, and Louis Gherlone Excavating, Inc., have filed separate answers which are essentially the same. The material allegations of the complaint are denied. With regard to paragraph 13 of count one, the defendants admit that Louis Gherlone is an officer of the defendant corporation, and that the corporation is also known as Louis Gherlone Tree Farms and Excavating, Inc. With regard to paragraph 15 of count two, the defendants Louis Gherlone and Linda Gherlone admit to having signed the personal guaranty dated October 25, 1995.
The party defendants' answers include several special defenses against the claims of plaintiff Astro Oil. The defendants assert that plaintiff Astro Oil is in violation of Connecticut General Statutes § 12-457[1]
and § 12-458[2]. Defendants assert that under Connecticut General Statute § 12-457, plaintiff Astro Oil has primary responsibility to maintain proper records of motor vehicle fuel purchases and sales. Further, the defendants assert that under Connecticut General Statute § 12-458 plaintiff Astro Oil is responsible for collecting and paying over to the Commissioner of Revenue Services the proper motor vehicle fuels tax on such sales. In addition, the defendants claim that plaintiff Astro Oil's failure to include on its billing invoices for the oil that tax was due denied the defendants the right to file for and obtain a refund under Connecticut General Statute § 12-459[3]. Also included in the special defenses is the claim that plaintiff Astro Oil is CT Page 6185 barred from an equitable claim under the clean hands doctrine as a result of it's deliberate deceit and false assurances to the defendants.
From the pleadings and the evidence presented at trial, the court finds the following facts:
1) Astro Oil is a distributor of number 2 heating oil;
2) Louis Gherlone is an officer of Louis Gherlone Excavating, Incorporated
2) Astro Oil through its President, James Vitali, entered into an agreement to sell number 2 heating oil to Louis Gherlone Excavating, Inc.;
3) Astro Oil and Louis Gherlone formed an understanding that the purpose of the oil was for the purpose of fueling the latter's machinery for off-road use — a taxable use.
4) Louis Gherlone knew or should have known that the fuel deliver tickets which his business submitted to the plaintiff for billing should have been marked "off road use."
5) Louis Gherlone and Linda Gherlone signed a personal guaranty for the extension of credit from Astro Oil to Louis Gherlone Excavating, Inc. on October 25, 1995, for the purpose of guaranteeing payment for the purchase of fuel.
6) Number 2 heating oil is subject to tax when used as fuel for off-road purposes, such as use in heavy machinery like bulldozers; however, Number 2 heating oil is not taxed when it is used to heat homes;
7) at all times with the exception of one occasion in December 1995, Louis Gherlone Excavating, Inc. purchased number 2 heating oil from 1995 through 1999;
8) Louis Gherlone Excavating, Inc. failed to mark its purchase loading slips with the "off-road" notation when purchasing the number 2 heating oil. (Exhibit 2)
9) Louis Gherlone Excavating, Inc. used the purchased number 2 heating oil for the off-road taxable purpose of fueling his excavating machines. From the evidence presented at trial, it appears that only a small portion of the fuel was used for the nontaxable purpose of home heating. CT Page 6186
10) Astro Oil did not include the tax required for off-road use when billing Louis Gherlone Excavating, Inc. for the number 2 heating oil because the purchase loading slip was not properly marked. (Exhibit 3A)
11) Astro Oil introduced evidence showing that the fuel pumps were marked with signs regarding a penalty for taxable use. (Exhibits 8A, 8B, 8C)
12) Astro Oil had all invoices marked with a statement that there was a penalty for taxable use. (Exhibit 3, 3A)
13) Astro Oil had all purchase loading slips marked with the statement that there was a penalty for taxable use. (Exhibit 2)
14) the defendant corporation received at least 39 invoice bills from plaintiff Astro Oil in the years 1995 through 1999 which clearly noted the fuel purchased as number 2 heating oil with a penalty for taxable use;
15) there is no evidence that any defendant attempted to notify plaintiff Astro Oil that the billing should be corrected;
16) Astro Oil knew that it was subject to audits by the State Department of Revenue Services.
17) the State Department of Revenue Services in December 1999 conducted an audit of plaintiff Astro Oil which resulted in an assessment of gross receipt tax of $3,666.70, and a state diesel tax in the amount of $26,824.68, against plaintiff Astro Oil for it's account with Louis Gherlone Excavating, Inc.
18) after adjustments Astro Oil paid $23,382.32 as the taxes assessed against it by the Connecticut Department of Revenue Services for the account of Louis Gherlone Excavating, Inc. the account of Louis Gherlone Excavating, Inc.,
 ANALYSIS
It is through the use of the equitable doctrine of subrogation that the plaintiff seeks to recoup its tax payments. The Connecticut Supreme Court, in Wesson, Inc. v. Hychko, 205 Conn. 51, 56.
(1987), quoted the Restatement treatment of the doctrine as follows:
 "[w]here property of one person is used in discharging an obligation owed by another . . . under such circumstances that the other would be unjustly CT Page 6187 enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee. Restatement, Restitution § 162. This doctrine is inapplicable where the payment has been made `officiously,' i.e., where the circumstances do not justify the interference with another's affairs resulting from conferring a benefit upon him. Restatement supra, § 2. A person does not act officiously when he pays another's debt under a mistake or when he has discharged an obligation for which he is also liable, but which another should equitably have paid. Restatement, supra, § 162, comment b; see Restatement, supra §§ 43, 76
 Id. at 56-57
Plaintiff Astro Oil paid the outstanding fuel tax of the defendant Louis Gherlone Excavating, Inc. not as a volunteer, but for the protection of its own rights and interests in maintaining good standing under the laws of the State of Connecticut. Following the interpretation of C.G.S. § 12-458 in Wesson, at 56, — that the intent of the legislature was to impose the burden of the tax upon the motor vehicle fuel purchaser or user, making the distributor responsible only for its collection and payment to the state — this court finds that the primary responsibility to pay the tax rests with the purchaser, Louis Gherlone Excavating, Inc.
The court now considers defendant's claim that the action of plaintiff Astro Oil in failing to include the tax in the invoice billings to the defendant corporation as required by C.G.S. § 12-457, caused harm to the defendant corporation by denying it the opportunity to file for a tax refund pursuant to C.G.S. § 12-459.
Conn. Gen. Stat. Sec. 12-457 places upon the distributor an obligation to keep and accurate record of fuel purchased. The statutes provides further that the distributor
. . . shall deliver, with each consignment or delivery . . . of fuels to any purchaser within this state a written statement of the names and addresses of the vendor and vendee, the number of gallons sold and the date of sale and delivery. Such written statement shall set forth whether or not the required state tax has been charged thereon.
(Emphasis added.) CT Page 6188
Although the billing invoices did not expressly state that the state tax had been charged thereon, the court finds that the wording of the term "penalty for taxable use" on the billing invoices put defendant Louis Gherlone and his corporation on notice that tax was due for his taxable use of the fuel in off-road vehicles. The court further finds that defendant Louis Gherlone knew or should have known about the taxable use from his initial conversations with James Vitali.
The court further finds that the action of the defendant in not marking the purchase loading slip properly as "taxable use" contributed to the invoice billings as they appear.
The defendants collectively have asserted that plaintiff Astro Oil's claim is barred by the clean hands doctrine. The standard for this fundamental maxim; i.e. that he who comes into equity must come with clean hands for equity will with hold subrogation from one who is guilty of a wrong in connection with the matter in controversy, was presented by the court in DeCecco v. Beach, 174 Conn. 29, 35 (1977) The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in willful misconduct with regard to the matter in litigation. DeCecco, supra. The court finds that the defendants have not proved that the actions of the plaintiff are such as would require the application of the absence of clean hands in this matter.
 CONCLUSION
In conclusion, the court finds the issues in favor of the plaintiff and against the defendants in this case. The court further finds the following:
1] the defendants are indebted to the plaintiff in the amount of $23,382.32 plus interest;
2] the plaintiff is entitled to an award of reasonable attorney's fees under the guaranty.
 JUDGMENT SHALL SO ENTER
It is further Ordered: that the parties shall appear in Courtroom 3-C, Superior Court, 235 Church Street, New Haven at 9:30 a.m. for a hearing on attorney's fees and for establishing the specific monetary interest due.
Clarance J. Jones, Judge CT Page 6189